IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JOSE EDUARDO GOMEZ SALAS,<br>Reg. No. 48278-480,<br>Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Respondent. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br>EP-22-CV-336-DB<br>EP-20-CR-1515-DB-1 |

## MEMORANDUM OPINION AND ORDER

Jose Eduardo Gomez Salas (Gomez) moves to vacate, set aside, or correct his sentence through a *pro se* motion pursuant to 28 U.S.C. § 2255. Mot. to Vacate, ECF No. 292.[1] His opposed motion is denied for the following reasons.

### BACKGROUND

Gomez is a 26-year-old citizen of the Dominican Republic serving a 96-month sentence for conspiracy to commit mail fraud and aggravated identity theft. 2nd Am. J. Crim. Case, ECF No. 282 at 1, 2. He is currently incarcerated at the Federal Correctional Institution in Yazoo City, Mississippi. *See* Find an Inmate, https://www.bop.gov/inmateloc/ (search for Reg. No. 48278-480) (last visited Feb. 24, 2022). His anticipated release date is February 3, 2027. *Id.*

Gomez conspired with others to obtain personal identifying information on hundreds of individuals—including names, addresses, credit card numbers, bank account numbers, pin numbers, Social Security numbers, and phone account information—from the dark web. Plea Agreement, ECF No. 170 at 15. They used the information to create false identification cards which they mailed via FedEx to co-conspirators located across the United States. *Id.* at 17. They

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in EP-20-CR-1515-DB-1. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

fraudulently used the information to obtain new credit cards to pay for their travels throughout the country. *Id.* at 15. They also fraudulently used the information to create new and access existing Verizon Wireless accounts in order to obtain cellular iPhones, iWatches, iPads, and Samsung cellular telephones and tablets from various stores all over the country. *Id.* at 15–17. They then shipped the electronic devices to different addresses in the United States via FedEx or UPS. *Id.*

Gomez was indicted for conspiracy to commit fraud in connection with access devices, in violation of 18 U.S.C. § 1029(b)(2) (Count One); conspiracy to commit mail fraud, in violation of 18 U.S.C. §§ 1341 and 134 (Count Two); using unauthorized access devices and aiding and abetting, in violation of 18 U.S.C. §§ 1029(a)(2) and 2 (Count Three); possession with intent to use five or more identification documents and aiding and abetting, in violation of 18 U.S.C. §§ 1028(a)(3) and 2 (Count Four); and aggravated identity theft and aiding and abetting, in violation of 18 U.S.C. § 1028A(a)(1) and 2 (Counts Five through Seven). Superseding Indictment, ECF No. 90.

Gomez negotiated a plea agreement with the Government. Plea Agreement, ECF No. 170. Under its terms, he agreed to plead guilty to Counts Two, Five, Six, and Seven of the indictment. *Id.* at 1. He acknowledged that Counts Five through Seven required a "minimum 2-year consecutive imprisonment sentence to any term of imprisonment imposed on any other count of conviction." *Id.* at 2. He waived any appeal or collateral attack on his sentence except when his challenge was "based on ineffective assistance of counsel or prosecutorial misconduct of constitutional dimension." *Id.* at 8. In exchange, he obtained the Government's promise to move to dismiss the remaining counts against him at his sentencing. *Id.* at 1.

The probation officer who prepared Gomez's presentence investigation report (PSR) noted the total loss to Verizon Wireless was $68,717.41. PSR, ECF No. 242 at ¶ 194. She determined his base offense level for Count Two—conspiracy to commit mail fraud—was seven. *Id.* at ¶ 206. She added six levels because the loss to Verizon Wireless was more than $40,000 but less than $95,000. *Id.* at ¶ 207. She added two levels because the offense involved "hundreds of individuals' stolen personally identifying information." *Id.* at ¶ 208. She added two levels because the offense occurred in multiple jurisdictions. *Id.* at ¶ 209. She added two levels because a co-defendant "created fraudulent identification cards and credit cards" in order for Gomez to represent himself as other individuals. *Id.* at ¶ 210. She added two levels because Gomez "was an organizer, leader, manager, or supervisor" of the criminal activity. *Id.* at ¶ 211. She deducted three levels for his acceptance of responsibility. *Id.* at ¶¶ 238, 239. She concluded Gomez's guideline imprisonment range for Count Two—based on a total offense level of 18 and a criminal history category of I—was 27 to 33 months. But, she added, "a sentence of 2 years shall be imposed as to Counts 5-7, consecutive to the sentence imposed in Count 2" for aggravated identity theft because 18 U.S.C. § 1028A(b) required "that such a term of imprisonment be imposed to run consecutively to any other term of imprisonment." *Id.* at ¶ 268.

Gomez did not object to the PSR. Addendum to PSR, ECF No. 242-2.

The Court adopted the PSR but reduced the total offense level to 16. Statement of Reasons, ECF No. 264 at 1. It sentenced Gomez within the Sentencing Guidelines range to 24 months' imprisonment as to Count Two—and two years' imprisonment as to Counts Five, Six, and Seven, "to run consecutive to each other and consecutive to Count Two, for a total of six (6) years and

3

twenty-four (24) months." 2nd Am. J. Crim. Case, ECF No. 282. It also ordered Gomez to pay restitution to Verizon Wireless in the amount of $68,717.41. *Id.* at 7.

In his motion, Gomez claims his counsel provided constitutionally ineffective assistance when he failed to (1) argue Gomez could serve the sentence for count two concurrently with the sentences for counts five, six, and seven; (2) protect the record on appeal so Gomez could appeal the consecutive sentences; (3) inform the Court that Gomez was eligible for a downward departure because he became ill during the COVID-19 pandemic and other courts were granting one-year sentence reductions under similar circumstances; (4) challenge the erroneously-calculated loss to the victims; and (5) effectively counter the Government's argument Gomez should receive an upward adjustment for his role as an organizer, leader, manager, or supervisor in the criminal enterprise. Mem. in Supp., ECF No. 292-1 at 3. He further contends his counsel provided ineffective assistance when he failed to (1) request an evidentiary hearing regarding the amount of loss to the victim; (2) object to the basis of the loss estimate; (3) submit a clear sentencing memorandum; and (4) argue different interpretations of the loss to the victims would result in a lesser sentence. *Id.* at 5. Gomez asks the Court for an evidentiary hearing and to correct his sentence. Mot. to Vacate, ECF No. 291 at 13.

### STANDARD OF REVIEW

Title 28 U.S.C. § 2255 " 'provides the primary means of collateral attack on a federal sentence.' " *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (quoting *Cox v. Warden*, 911 F.2d 1111, 1113 (5th Cir. 1990)). But "it does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). It is not a "substitute for direct appeals." *United States v. Willis*, 273 F.3d 592, 596 (5th Cir. 2001); *see also United States v.*

*Frady*, 456 U.S. 152, 167 (1982) (imposing a "cause and actual prejudice" standard on motions for collateral relief when no objection was made on direct appeal); *Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating "[w]here the petitioner—whether a state or federal prisoner—failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice.' "). And it identifies only four grounds on which a prisoner may obtain relief: (1) the "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted). Consequently, § 2255 does not permit relief on a claim of error that is neither constitutional nor jurisdictional unless the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428 (1962). It also requires the prisoner to bear the burden of establishing a claim of error by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980) (citing *United States v. Kastenbaum*, 613 F.2d 86, 89 (5th Cir. 1980)). It permits a court to "vacate and set the judgment aside" if a prisoner's claims are meritorious and to "discharge the prisoner or resentence him or grant [him] a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). But it also allows a court to dismiss the motion "[i]f it plainly appears from the motion . . . and the record of prior proceedings that the moving party is not entitled to relief." 28 U.S.C. foll. § 2255 Rule 4(b); *see also* 28 U.S.C. § 2255(b); *United States v. Drummond*, 910 F.2d 284, 285 (5th Cir. 1990) ("Faced squarely with the question, we now confirm that § 2255 requires only conclusive

evidence—and not necessarily direct evidence—that a defendant is entitled to no relief under § 2255 before the district court can deny the motion without a hearing.").

A prisoner may bring "an ineffective-assistance-of-counsel claim . . . in a collateral proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 504 (2003). If he does, his claim is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail, he has the burden of showing (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689–94. To establish deficient performance, he must prove that his counsel's assistance fell " 'below an objective standard of reasonableness.' " *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (quoting *Strickland*, 466 U.S. at 688). "[T]o establish prejudice, [he] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (quoting *Strickland*, 466 U.S. at 694).

## ANALYSIS

### A. Concurrent Sentences

Gomez alleges his trial attorney provided constitutionally ineffective assistance when he failed to argue Gomez could serve his sentence for conspiracy to commit mail fraud (Count Two) concurrently with his sentences for aggravated identity theft and aiding and abetting (Counts Five, Six, and Seven). Mem. in Supp., ECF No. 292-1 at 3–4. He also claims his counsel failed to protect the record so he could appeal the consecutive sentences. *Id.*

The statute criminalizing aggravated identity theft has a unique sentencing provision. It requires a court to impose the mandatory two-year term of imprisonment for a violation of 18 U.S.C. § 1028A consecutively to a term of imprisonment for certain specified offenses:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1). "[T]he term 'felony violation enumerated in subsection (c)' means any offense that is a felony violation of . . . any provision contained in chapter 63 (relating to mail, bank, and wire fraud)." *Id.* § 1028A(c)(5). The statute also permits a court to impose consecutive two-year terms of imprisonment for each additional aggravated identity theft conviction. *Id.* § 1028A(b)(2). But it gives a court the discretion to run multiple aggravated identity theft convictions concurrently, "provided that such discretion shall be exercised in accordance with any applicable guidelines and policy statements issued by the Sentencing Commission." *Id.* § 1028A(b)(4); *see also United States v. Brown*, 432 F. App'x 339, 340 (5th Cir. 2011) ("The district court had discretion to determine whether to order that the sentence for the second aggravated identity theft be served concurrently or consecutively.").

The Sentencing Commission's policy, contained in Sentencing Guideline § 5G1.2, Application Note 2(B), advises a court that when determining if sentences will run concurrently or consecutively to each other, it should consider (1) "[t]he nature and seriousness of the underlying offenses," (2) "[w]hether the underlying offenses are groupable under Sentencing Guideline §3D1.2 (Groups of Closely Related Counts)," and (3) "[w]hether the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2) are better achieved by imposing a concurrent or a

7

consecutive sentence for multiple counts of 18 U.S.C. § 1028A." U.S. SENT'G GUIDELINES MANUAL § 5G1.2 cmt. n.2.(B) (U.S. SENT'G COMM'N 2018); *Brown*, 432 F. App'x at 340.

The nature and seriousness of Gomez's underlying offenses support the Court's imposition of consecutive sentences for the two additional aggravated identity theft counts. *Id.* Gomez and his co-conspirators used stolen Verizon Wireless accounts and PIN numbers to obtain iPhones, Apple watches, iPads, and additional telephone lines. PSR, ECF No. 242 at ¶¶ 8, 20, 49, 50, 57, 127 and 191. They kept the fraudulently purchased products—while their victims received the bills. *Id.* at ¶¶ 8 and 15. They shared information—including names and addresses of account holders, credit card numbers, and CVV codes—concerning at least 158 actual credit accounts in the furtherance of their criminal scheme. *Id.* at ¶¶ 188, 191. Their fraud impacted at least 31 separate businesses in numerous states, including Florida, Georgia, Maryland, South Carolina, New Mexico, Colorado, Utah, Idaho, Oregon, Michigan, Washington, California, Texas and Arizona. *Id.* at ¶¶ 28, 32 and 191. They caused the loss of $68,717.41 to multiple Verizon Wireless accounts. *Id.* at ¶ 194.

The Court also finds the following sentencing factors support the imposition of consecutive sentences: the nature, circumstances, and seriousness of the offenses; the need to reflect the seriousness of the offenses; the need to promote respect for the law; and the need to provide just punishment for the offenses. *See* 18 U.S.C. § 3553(a)(1) and 3553(a)(2)(A). The Court further finds a need remains to protect the public from Gomez and to deter him from committing future crimes. *See id.* § 3553(a)(2)(B)-(C). The Court additionally observes it must consider the Sentencing Guidelines—which it did—and avoid unwarranted sentence disparities. *See* 18 U.S.C. § 3553(a)(3)–(6).

Furthermore, Gomez acknowledged in his plea agreement that Counts Five through Seven required a "minimum 2-year consecutive imprisonment sentence to any term of imprisonment imposed on any other count of conviction." Plea Agreement, ECF No. 170 at 2. So, he knew before he entered his pleas that he faced two-year consecutive sentences for each aggravated identity theft offense.

Considering the applicable law and the seriousness of Gomez's offenses, any objection by Gomez's counsel to the consecutive sentences would have been unavailing. "The strong presumption that counsel's challenged conduct was the product of reasoned trial strategy is the same at both the guilt-innocence and sentencing phases of criminal trial." *Pape v. Thaler*, 645 F.3d 281, 292 (5th Cir. 2011). As a result, Gomez cannot meet his burden of showing that his counsel's omission was either deficient or that his performance prejudiced his defense. *Strickland*, 466 U.S. at 689–94.

Additionally, if Gomez's attorney had objected to the imposition of consecutive sentences, and if the Court had overruled the objection, the Fifth Circuit would have reviewed the Court's decision "as to the application of consecutive or concurrent sentences . . . for abuse of discretion." *United States v. Richardson*, 87 F.3d 706, 709 (5th Cir. 1996).

> When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness. But if the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

*Gall v. United States*, 552 U.S. 38, 51 (2007).

The Court notes the statute permits a court to impose consecutive two-year terms of imprisonment for each additional aggravated identity theft conviction. 18 U.S.C. § 1028A(b)(2). It further notes the Sentencing Guidelines allow a court to impose consecutive sentences. U.S. SENT'G GUIDELINES MANUAL § 5G1.2 cmt. n.2.(B) (U.S. SENT'G COMM'N 2018). It also notes, as discussed above, the nature and seriousness of Gomez's underlying offenses support the imposition of consecutive sentences for each additional aggravated identity theft conviction. The Court observes a "rebuttable presumption of reasonableness applies to a consecutive sentence imposed within the parameters of the advisory federal guidelines." *United States v. Candia*, 454 F.3d 468, 473 (5th Cir. 2006). The Court accordingly finds it did not abuse its discretion when it imposed the consecutive sentences on Gomez—which were within the parameters of the guidelines. *See United States. v. Egu*, 379 F. App'x 605, 608 (9th Cir. 2010) (finding no abuse of discretion where the Court imposed consecutive sentences on multiple § 1028A counts "because (1) Defendant victimized multiple people, including some not named in the indictment; (2) Defendant's § 1028A conduct substantially harmed the victims; and (3) his scheme was sophisticated, extensive, and long-lasting. These three factors, but especially the number of victims, provide a rational and objective basis for imposing consecutive § 1028A sentences, particularly where § 1028A does not itself provide for incremental punishment in cases involving multiple victims. More victims arguably mean more harm, warranting greater punishment.").

Even if Gomez's attorney had objected to the Court's imposition of the consecutive sentences and the Court had overruled the objection, Gomez could not show the Court abused its discretion. Consequently, Gomez cannot show that he was prejudiced by his attorney's failure to object, and he is not entitled to relief on his claim.

## B. COVID-19

Gomez reports "he developed asthma as a child and uses an inhaler as needed." PSR, ECF No. 242 at ¶ 253. His medical records show he "has been prescribed Ventolin HFA 18 Grams (inhale two puffs four times a day as needed)." *Id.* Consequently, Gomez alleges his trial attorney provided constitutionally ineffective assistance when he failed to inform the Court that Gomez was eligible for a "hard time adjustment to his sentence" because of the public health threat posed to him by the COVID-19. Mem. in Supp., ECF No. 292-1 at 3,4.

"Departures from the guidelines are within the broad discretion of the Court." *United States v. Adams*, 996 F.2d 75, 78 (5th Cir. 1993). The Sentencing Guidelines provide "[a]n extraordinary physical impairment may be a reason to depart downward." U.S. SENT'G GUIDELINES MANUAL § 5H1.4 (U.S. SENT'G COMM'N 2018). But "[a] departure based on a physical condition is a discouraged ground on which to depart and should be limited to exceptional circumstances." *United States v. Coughlin*, 500 F.3d 813, 818 (8th Cir. 2007). So, the Fifth Circuit Court of Appeals has held, for example, that a defendant suffering from "cancer in remission, high blood pressure, a fused right ankle, an amputated left leg, and drug dependency" did not justify a section 5H1.4 downward departure. *United States v. Guajardo*, 950 F.2d 203, 208 (5th Cir. 1991). According to the Eighth Circuit Court of Appeals, a court should ask three questions to determine whether an extraordinary physical impairment exists to justify a downward departure:

> (1) whether the physical condition of the defendant makes it so imprisonment would be more than a normal hardship; (2) whether imprisonment would subject the defendant to more than normal danger or inconvenience; specifically whether imprisonment would worsen the defendant's condition and whether the defendant requires special care the Bureau of Prisons does not provide; and (3) whether the defendant's physical condition has any present effect on his or her ability to function.

*United States v. Dailey*, 958 F.3d 742, 746 (8th Cir. 2020).

Gomez's medical condition—asthma—is shared by 8.5 percent of all adults in the United States between 22 and 39 years old. *See* The Centers for Disease Control and Prevention, Most Recent National Asthma Data, https://www.cdc.gov/asthma/most_recent_national_asthma_data.htm (last visited Mar. 1, 2023). As a result, Gomez's condition is not an extraordinary physical impairment and does not create a more than normal hardship for him while he is incarcerated. Furthermore, he receives adequate medical care for his asthma while in prison. PSR, ECF No. 242 at ¶ 253. And his asthma apparently does not have any present effect on his ability to function. Consequently, he cannot show an extraordinary physical impairment exists to justify a downward departure.

Additionally, courts have routinely denied a defendant's motion for a downward departure based on multiple medical conditions when combined with the harsh conditions prisoners generally experience while imprisoned during the COVID pandemic. *See, e.g., United States v. Coffer*, 860 F. App'x 416, 418–19 (6th Cir. 2021) (denying a requested downward variance by a defendant who suffered from diabetic nephropathy and various other ailments which placed him at higher risk of death or complications from COVID-19); *United States v. Rogers*, 20 F.4th 404, 406 (8th Cir. 2021) (denying a downward variance based on Defendant's "health conditions -- asthma, high blood pressure, and high cholesterol that place[d] him at high risk of serious illness or death from COVID-19" because the district court "considered the 18 U.S.C. § 3553(a) sentencing factors."); *United States v. Hernandez-Alavez*, 836 F. App' x 159, 160 (4th Cir. 2021) (denying "a downward departure or variance based on the COVID-19 pandemic's impact in prisons"); *United States v. Hymes*, 19 F.4th 928, 935 (6th Cir. 2021) (denying a downward

12

departure based on the conditions of confinement resulting from the COVID-19 pandemic, since "the district court made its discretionary determination under 18 U.S.C. § 3553(a) [and] it voiced thoughtful concerns about (1) the sentencing disparities that could result given the potential for differing views about the nature of the pandemic and (2) the need for criminal defendants like the rest of society to bear the sacrifices of the pandemic.").

Based on these considerations, Gomez's claim simply lacks merit. His ineffective-assistance-of-counsel claim cannot be successful when it is based on his "attorney's failure to raise a meritless argument." *United States v. Kimbler*, 167 F.3d 889, 893 (5th Cir. 1999): *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("[C]ounsel is not required to make futile motions or objections."). His attorney did not prejudice his cause with his omission—and was accordingly not ineffective—when he failed to move for a downward departure based on Gomez's asthma and potential vulnerability to the effects of the corona virus.

### C. Organizer, Leader, Manager, or Supervisor

Gomez alleges that his trial attorney provided constitutionally ineffective assistance when he failed to effectively counter the Government's argument that he should receive an upward adjustment for his role as an organizer, leader, manager, or supervisor in the criminal enterprise. Mem. in Supp., ECF No. 292-1 at 3, 5.

The Sentencing Guidelines state an "enhancement is appropriate where 'the defendant was an organizer, leader, manager, or supervisor in any criminal activity.' " *United States v. Delgado*, 672 F.3d 320, 345 (5th Cir. 2012) (quoting U.S. SENT'G GUIDELINES MANUAL § 3B1.1(c) (U.S. SENT'G COMM'N 2006). To qualify for the enhancement, "[t]he application notes to section 3B1.1 require that the defendant either (1) exercised control over another participant in the offense, or

(2) 'exercised management responsibility over the property, assets, or activities of a criminal organization.' " *Id.* (quoting U.S. SENT'G GUIDELINES MANUAL § 3B1.1, cmt. n.2.).

The PSR—which the Court adopted—provides a detailed basis to support a two-level upward adjustment for leader or organizer. Statement of Reasons, ECF No. 264. Specifically, it states:

> Regarding his role in the instant offense, Gomez Salas was an organizer and supervisor in the criminal conspiracy, as follows:
>
> - [He] supervised the recruited co-defendants in their participation in the criminal conspiracy.
>
> - He supervised and organized the criminal activities of various unindicted co-conspirators and two co-defendants, to travel to various stores in various states throughout the United States. The electronics were fraudulently obtained from various stores, which included Costco, Best Buy, Target and Verizon, while using the stolen account information to obtain new cellular iPhones, iWatches, iPads, and Samsung cellular telephones and tablets.
>
> - He utilized and provided the numerous individuals' personal identifying information, including names, addresses, credit card numbers, bank account numbers, pin numbers, Social Security numbers, and phone account information which [Co-defendant] Briceno-Romero had obtained from the Dark web and gave it to the co-defendants to perpetuate this fraudulent scheme.
>
> - He used hundreds of fraudulent identification cards/driver's licenses, and fraudulent credit cards, which were created from the individuals' names, account numbers, personal identification numbers, and credit card numbers fraudulently obtained from Briceno-Romero and used them to perpetuate this fraudulent scheme by his instructing the co-defendants to represent themselves to be these individuals, in order to make food and hotel purchases, as well as to obtain several electronic devices, including iPhones, iPads, iWatches, Samsung phones and tablets in several different states throughout the United States.
>
> - He directed each of the co-defendants to ship via FedEx or UPS the fraudulently obtained iPhones, iPads, iWatches, Samsung phones and tablets to various addresses in the United States and to Briceno-Romero.
>
> - He would provide numerous fraudulently created credit cards/credit card numbers and fraudulently created identifications for use by the co-defendants

14

- as they traveled throughout the United States to be used to fraudulently obtain electronic devices, and to pay for food/lodging.

- He regularly monitored the co-defendants' time spent inside retail stores as they fraudulently obtained or attempted to obtain iPhones, iPads, iWatches, Samsung phones and tablets and he reported that information back to Briceno-Romero and/or [Co-defendant] Polanco-Alvarez.

PSR, ECF No. 242 at ¶ 198.

Facts contained in a PSR are considered reliable and may be adopted without further inquiry if the defendant fails to present competent rebuttal evidence. *United States v. Puig-Infante*, 19 F.3d 929, 943 (5th Cir. 1994). Rebuttal evidence must demonstrate that the PSR information is "materially untrue, inaccurate or unreliable." *United States v. Angulo*, 927 F.2d 202, 205 (5th Cir.1991).

According to the probation officer who prepared the PSR, Gomez exercised control over other participants in the offenses and exercised management responsibility over the property, assets, or activities of the organization. *See Delgado*, 672 F.3d at 345. Gomez failed to provide competent evidence to rebut the contents of the PSR at the time of his sentencing or thereafter. Therefore, Gomez has not shown the probation officer erred in concluding he "was an organizer, leader, manager, or supervisor" of a criminal activity—and recommending a two-level upward adjustment for his aggravating role. PSR, ECF No. 242 at ¶ 211

Since the PSR clearly justifies the upward adjustment—and Gomez provides no competent evidence to rebut its contents—Gomez also cannot show his attorney was ineffective for failing to object. Furthermore, even if his counsel's performance was deficient for not objecting, Gomez cannot prove that the deficiency resulted in a different outcome. So, Gomez cannot show he was prejudiced by his counsel's omission. As a result, he is not entitled to relief on this claim.

### D. Challenge the Loss

Gomez alleges that his trial attorney provided constitutionally ineffective assistance when he failed to challenge the "erroneously calculated" loss to the victims, request an evidentiary hearing regarding the amount of loss to the victims, object to the basis of the loss estimate, submit a clear sentencing memorandum, and argue different interpretations of the loss to the victims would result in a lesser sentence. Mem. in Supp., ECF No. 292-1 at 3, 5.

All "relevant conduct," as defined in Sentencing Guideline § 1B1.3, is used to determine a defendant's base offense level. *United States v. Vital*, 68 F.3d 114, 117 (5th Cir.1995). "[R]elevant conduct includes 'all reasonably foreseeable acts and omissions of others in furtherance of jointly undertaken criminal activity.' " *United States v. Hammond*, 201 F.3d 346, 351(5th Cir. 1999) (quoting U.S. SENT'G GUIDELINES MANUAL § 1B1.3(a)(1)(B)). Specifically, relevant conduct includes:

(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were

    (i) within the scope of the jointly undertaken criminal activity,

    (ii) in furtherance of that criminal activity, and

    (iii) reasonably foreseeable in connection with that criminal activity; that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S. SENT'G GUIDELINES MANUAL § 1B1.3(a)(1) (U.S. SENT'G COMM'N 2018).

Gomez admitted to the time frame of the conspiracy and to a summary of the offense conduct in his plea agreement and at his plea hearing. Plea Agreement, ECF No. 170 at 15–17; Plea Tr., ECF No. 301, at 23:13–25:3. His PSR assessed the relevant conduct—in this case the loss to the Verizon accounts—equaled $68,717.41. PSR, ECF No. 242 at ¶ 194. Moreover, the PSR supported the conclusion that the loss was within the scope of Gomez's agreement to jointly-undertake criminal activities with his co-conspirators—and was reasonably foreseeable to him. *See Hammond*, 201 F.3d at 351.

When a defendant wants to prevent a sentencing court from adopting a PSR supported by an adequate evidentiary basis, he must introduce rebuttal evidence that "demonstrate[s] that the information contained in the PSR is 'materially untrue, inaccurate or unreliable.' " *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir.1999) (quoting *United States v. Parker*, 133 F.3d 322, 329 (5th Cir.1998)). A defendant's "[m]ere objections do not suffice as competent rebuttal evidence." *Parker*, 133 F.3d at 329 (citing *Puig–Infante*, 19 F.3d at 943). "When a petitioner argues that his or her counsel rendered ineffective assistance by failing to introduce evidence to rebut a PSR, the petitioner must identify the missing evidence and demonstrate how that evidence casts doubt on the information set forth in the report." *Araromi v. United States*, No. 3:09-CR-3143-KC, 2014 WL 1652595, at *21 (W.D. Tex. April 23, 2014).

Gomez complains about his attorney's failure to challenge the loss calculation, but offers no evidence, legal argument or legal basis to support his claim. His general statements and conclusory allegations are not sufficient to rebut the contents of the PSR. *Knighton v. Maggio*, 740 F.2d 1344, 1349–1350 (5th Cir. 1984). Moreover, Gomez fails to state how his attorney should have challenged the alleged erroneously calculated loss, why his attorney should have requested

17

an evidentiary hearing with regard to amount of the loss, why his attorney should have objected to the loss estimate, why his attorney should have filed a clear sentencing memorandum or what different interpretations his attorney could have offered with regard to the loss to reduce the amount of the loss. Gomez does not provide any reliable rebuttal evidence to support a reduction in the amount of the loss. Gomez cannot show the PSR is unreliable or that the loss calculation was unreliable. His counsel is not required to file futile or frivolous motions. *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile motions or frivolous objections); *Green v. Johnson*, 160 F.3d 1029, 1037-1042 (5th Cir. 1998) ("failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness"). Gomez cannot show that his attorney provided ineffective assistance of counsel.

Additionally, even if Gomez's attorney had challenged the loss amount, filed a sentencing memorandum and requested an evidentiary hearing, Gomez cannot show that the result would have been different. Hence, Gomez cannot prove he was prejudiced, and he is not entitled to relief on this claim.

### EVIDENTIARY HEARING

A motion brought under § 2255 may be denied without a hearing if "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). The record in this case is adequate to dispose fully and fairly of Gomez's claims. The Court need inquire no further on collateral review and an evidentiary hearing is not necessary.

## CERTIFICATE OF APPEALABILITY

A movant may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). He may not receive a certificate of appealability unless he "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). He "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" when district court rejects his constitutional claims on the merits. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in the context of § 2255 proceedings). He must show both that "jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" when district court rejects his claims solely on procedural grounds. *Slack*, 529 U.S. at 484.

Reasonable jurists could not debate the Court's reasoning for denying Gomez's claims on substantive or procedural grounds—or find that his issues deserve encouragement to proceed. *Miller El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).

The Court will not issue a certificate of appealability.

## CONCLUSION AND ORDER

The Court concludes Gomez has failed to assert claims establishing (1) his "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum

authorized by law, or (4) the sentence is otherwise subject to collateral attack." *Seyfert*, 67 F.3d at 546. The Court also concludes that Gomez is not entitled to a certificate of appealability.

Accordingly, the Court enters the following orders:

**IT IS ORDERED** that Gomez's *pro se* Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 292) is **DENIED**, and his civil cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Gomez is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

**IT IS FURTHER ORDERED** that all pending motions are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**IT IS SO ORDERED.**

**SIGNED** this ___6th___ day of March 2023.

DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE